IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 CR 862 |
| vs. | ) | |
| | ) | Judge Matthew F. Kennelly |
| GABRIEL TOADER, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT TOADER'S REPLY IN SUPPORT OF MOTION TO DISMISS
INDICTMENT WITH PREJUDICE FOR VIOLATION OF SPEEDY TRIAL ACT**

**INTRODUCTION**

In response to Mr. Toader's pro-se motion to dismiss the indictment, the government

admits exceeding the 30 day statutory time limit for filing an indictment and agrees the case

should be dismissed as mandated by The Speedy Trial Act, ("SPA"), 18 U.S.C. § 3161 (b).  The

government offers no explanation for the delay between date of the removal order, entered by the

Magistrate Judge in Arizona and Mr. Toader's initial appearance in the Northern District of

Illinois.  After Mr. Toader's arrival in the Northern District of Illinois, the government moved, on

March 11, 2008, ex parte and under seal,  for a 26 day extension to indict or file an information

pursuant to 18 U.S.C. § 3161 (h)(8)(A)&(B).  The government's motion failed to inform the

acting Chief Judge that they were already in violation of the Speedy Trial Act.  Moreover, the

government relied upon grounds not founded in § 3161 (h)(8)(A)&(B) to justify the extension.

In the succeeding sections, Mr. Toader sets forth the facts and  law that support dismissing the

indictment with prejudice.

## FACTUAL BACKGROUND

On December 21, 2007, Mr. Toader was charged in the Northern District of Illinois, via

criminal complaint 07 CR 862, with violating 18 U.S.C. § 1957(a).  On December 26, 2007, Mr.

Toader was arrested in Arizona, upon information and belief, pursuant to a warrant for this case.[1]

On December 27, 2007, Mr. Toader was before Magistrate Judge Pyle in Tucson, AZ. for an

initial appearance.  (Ex. 1, Minute Order).  On that same day the clerk of the Arizona District

Court received a warrant for the arrest of Mr. Toader from the Northern District of Illinois,

pertaining to case 07 CR 862.  (Ex. 2, Arrest Warrant).  Six days later, January 2, 2008, Mr.

Toader appeared again before Magistrate Judge Pyle, and waived an identity hearing.  (Ex. 3).

The government overlooks the fact that Mr. Toader **did not** waive his preliminary hearing and

the Court ordered that the hearing be held in the prosecuting district. (Id).  The court further

ordered Mr. Toader's "prompt removal" to the Northern District of Illinois. (Ex. 4).  That same

day, the Clerk of the Northern District of Illinois received Mr. Toader's Rule 5(c)(3) paperwork

which had been forwarded by the Clerk of the Arizona Court.  (See, NDIL docket # 5, case 07

CR 862 and Ex. 5).

Mr. Toader was taken from Tucson to Oklahoma.  Mr. Toader was held in "the hole"in

Oklahoma, and was unable to communicated with anyone.  Stefan Dumitru, a fugitive defendant

in the related 21 defendant case (06 CR 923) was also being held in Oklahoma during part of the

time Mr. Toader was there.  The docket in case 06 CR 923 reflects that Dumitru was arrested on

---

[1]On December 15, 2007, Mr. Toader was arrested in Arizona (upon information and
belief) for overstaying upon his visa and not, as claimed by the government, for illegally entering
the United States without inspection.  Bond was set in that case and Mr. Toader was released on
December 26, 2007.  As he was departing the holding facility he was arrested in the instant case.
The Arizona court's docket does not reflect any pending charges relating to the immigration case.

December 12, 2007.  (Docket entry dated 12/08/07).  Upon information and belief, Dumitru was

arrested in another state.  Dumitru appeared before Judge Darrah for arraignment, in the Northern

District of Illinois, on February 13, 2008.  (Docket # 411).

   Mr. Toader arrived at the MCC in Chicago on February 22, 2008, 51 days after

Magistrate Pyle had ordered that," the Marshal promptly remove defendant from the District of

Arizona to the charging district".  (Ex. 4).   Mr. Toader's initial appearance in the Illinois, before

Magistrate Judge Cole, took place on February 27, 2008.  (Docket # 6).  Attorney Timothy

O'Conner, Mr. Meyer's partner appeared for Mr. Toader. (Portion of transcript, 2/27/08, attached

as Ex. 6).   O'Conner informed the Court that he did not believe that he or Mr. Meyer would be

representing Mr. Toader in the future due to Mr. Meyer's previous representation of a

codefendant in a related case and a possible conflict of interest.  (Id @ p. 5)  Mr. Toader was

granted a continuance until March 4, 2008, to obtain counsel.  On March 4, 2008, attorney John

Meyer filed his appearance as attorney for Mr. Toader.  The following day attorney Meyer

waived Mr. Toader's detention hearing and preliminary hearing. (Docket # 8).   Mr. Toader was

unaware that Mr. Meyer intended to waive the  preliminary hearing and did not agree to the

waiver.

   On March 11, 2008, the government filed an *ex parte* motion, under seal, for a 26 day

extension of time to seek the return of an indictment or to file an information as to Gabriel

Toader, pursuant to 18 U.S.C. § 3161(h)(8).  (Docket # 10, Gov. Ex Parte Motion for Extension

of Time to Indict @ p. 1)(hereinafter "Ex Parte Motion").   Acting Chief Judge Pallmeyer

granted the government's motion and an order was entered the same day.  (Docket # 11 and 12).

Mr. Toader was not informed by his attorney, Mr. Meyer, about the government's *ex parte*

motion, under seal, for an extension of time, nor did he agree to it.   Mr. Meyer filed a motion to

withdraw as Mr. Toader's attorney on April 10, 2008, and that motion was granted on April 15,

2008.  (Docket # 13 and 16).

Mr. Toader and his three co-defendants were indicted on April 17, 2008.  (Docket # 19).

This indictment grew out of a prior case, 06 CR 923, involving 21 defendants charged with a

wire fraud scheme. (Affidavit in Support of Complaint, 07 CR 862, @ p. 2)(hereinafter

"affidavit").  The government began investigating the scheme in July 2004, three and one half

years prior to the arrest of Mr. Toader..   (Ex Parte Motion  @ p. 1).  Prior to government filing

the Ex Parte Motion, all of the non-fugitive defendants had either pled guilty or were found

guilty at trial.  (Ex Parte Motion @ p. 2).

The government learned about Mr. Toader's purported involvement in the scheme

through the cooperation of Adrian Ianc and Cristian Bentan, two defendants in the earlier case.

(Affidavit @ p. 5).  Prior to pleading guilty, on June 21, 2007 (Ianc) and October 9, 2007,

(Bentan) pursuant to 11(c)(1)( C) plea agreements, the two defendants had cooperated against

Mr. Toader. ( Affidavit @ pages 6 and 10).  The government claimed that they were able to

corroborate the information through, *inter alia*, records obtained from Western Union, currency

exchanges, phone companies, Bank of America, JP Morgan Chase Bank and MoneyGram.

(Affidavit @ pages 12-21).

On February 29, 2008, the government sent Toader's prior attorney, Mr. Meyer, a letter

along with," a small sample of the documentation gathered by the government thus far

demonstrating your clients guilt." (Letter of 2/29/08, attached as Ex. 7) The letter further stated,

"if you will agree to waive the preliminary examination, I will begin preparing a voluminous

package of discovery so that you may further assess the case." (Id.)  The government also

expressed their desire to obtain a short extension of time to return the indictment.[2]  (Id).

On March 11, 2008, the government sent another letter to Mr. Meyer and, "enclosed a

number of spreadsheets summarizing some of the financial records that the government has

obtained documenting the evidence of your client's money laundering activity". (Letter of March

11, 2008, attached as Ex. 8).  Copies of bank records and telephone records were also enclosed

with the letter.  (Id.)  The letter further contained the government's preliminary calculation of Mr.

Toader's guidelines with respect to the governments suggestion that he plead to money

laundering.  (Id.)

Finally, in terms of relevant correspondence, the government sent a letter to Mr. Meyer on

March 20, 2008, wherein they rescinded their offer to allow Mr. Toader to plead to money

laundering because,

> **...the evidence in the case has now progressed to the point where I do
> not believe a plea to a money laundering count alone will be possible.**
> For example, I **recently learned** that Toader was buying counterfeit
> identification documents for his crew from an individual who was working
> as a cooperating witness in the investigation of the Leija-Sanchez
> organization that operated near 26th and Cal. **The case agents are
> gathering copies of recorded calls placed by Toader to the CW, and I
> will provide copies of those call to you when I receive them.**
> (Letter of 3/20/08, attached as Ex. 9). (Emphasis supplied).

### MEMORANDUM OF LAW AND ARGUMENT

Any information or indictment charging an individual with the commission of an offense

shall be filed within thirty days from the date on which such individual was arrested or served

---

[2]It should be noted that March 4, 2005 is the first date where Mr. Toader spoke to Mr.
Meyer.  That conversation took place at the MCC.

with a summons in connection with a felony.  18 U.S.C. § 3161(b).   In all, 114 days elapsed

between Mr. Toader's arrest in AZ. and the return of the indictment.  Of those 114 days, 30 days

are excludable under the STA,   An additional 10 days are excludable pursuant to 18 U.S.C. §

3161(H)(1)(h) which states that;

> Delay resulting from the transportation of any defendant from another
> district, or to and from places of examination or hospitalization, except
> that any time consumed in excess of ten days from the date of the order of
> removal or an order directing such transportation and the defendant's
> arrival at the destination shall be presumed to be unreasonable.

Another 6 days are excludable based on defendant's motion to continue to obtain counsel on

2/27/08.   18 U.S.C. § 3161(H)(8)(A).

In their reply, the government concedes that they exceeded the thirty day time limit and

that the indictment, as to Mr. Toader, should be dismissed.  In determining whether to dismiss

with or without prejudice, 18 U.S.C. § 3162(a)(1)  requires the Court to consider, among others,

the following factors:

> 1.  The seriousness of the offense;
> 2. The facts and circumstances of the case which led to the dismissal; and
> 3.  The impact of a reprosecution on the administration of this chapter and on the
> administration of justice.

## SERIOUSNESS OF THE OFFENSE

The fact that this case or for that matter any other case in federal court  is regarded as

"serious" is hardly surprising.  However, the fact that a case is deemed serious is not a bar to

dismissal with prejudice pursuant to the STA.  See, U.S. v. Harden, 10 F. Supp.2d 556 (D.S.C.,

1997) . (dismissal with prejudice of case charging 13 defendants with conspiracy to distribute

crack, powder cocaine and marijuana). U.S. v. Ramirez, 973 F2d 36(1st Cir. 1992) (dismissal

with prejudice of case charging two defendants with possession of over 500 grams of cocaine

with the intent to distribute, and conspiracy to distribute). U.S. v. Bilotta, 645 F. Supp 369

(E.D.N.Y., 1986).((dismissal with prejudice of two counts of three count indictment charging

defendant conspiring, in violation of 18 U.S.C. § 371, to violate 22 U.S.C. § 2778 by exporting

without a license speech scramblers, space electronics and anti-"G" suits to the U.S.S.R. and

military training equipment and patrol vessels to Libya; and 2) conspiring, in violation of § 371,

to violate §§ 2401 et seq. by exporting electronic equipment to the U.S.S.R. and camouflage to

Libya, knowing that the exports would be used for the benefit of those countries, to which

exports are restricted)

The government's reliance on Killingsworth is misplaced and disingenuous. The

Appellate Court criticized the district court for undervaluing the seriousness of the offense in

that, although the case involved a gun, there was no murder or injury. There is no violence

alleged in the case against Mr. Toader. More importantly, the primary reason the Appellate

Court reversed the district court was that Killingsworth conceded that the government did not

intentionally cause the delay and that he suffered no prejudice. Killingsworth @ p. 1090.

The Fountain case offers no guidance to this Court in evaluating the seriousness of Mr.

Toader's offense. Fountain and two others with first-degree murder of a federal employee, 18

U.S.C. §§ 1111 and 1114, and conspiracy to commit murder, 18 U.S.C. § 1117. In addition to

being a far more serious case, Fountain is procedurally distinguishable. Fountain and a

codefendant pleaded guilty on the same day in a joint proceeding under Fed.R.Crim.P. 11. Their

appeals were consolidated. The codefendant's conviction was affirmed and Fountain's was

vacated because the record did not contain an adequate factual basis for his plea. United States v.

Fountain, 777 F.2d 351, 356-57 (7th Cir.1985). The mandate for resentencing Fountain did not

reach the district court until after seventy day STA limit had expired from the date the action

occasioning the retrial became final. (18 U.S.C. § 3161(e)). The record did not accompany the

mandate; it stayed in the Appellate Court because the codefendant had filed a motion for

extension of time to file a petition for rehearing.  The codefendant next filed a petition for

certiorari, which automatically stayed issuance of the mandate. (Fed.R.App.P. 41(b)). The

mandate in the codefendant's case finally issued on March 28, 1986, and the record went with it.

Only then did the district court recognize that Fountain was entitled to plead anew-but by then

the 70 days were gone.

        Most certainly, the following belies the government's posture that they consider Mr.

Toader's case serious.  The government did not obtain an indictment and fugitive warrant for Mr.

Toader as they had done with some of the defendant's in the 21 defendant case.  By their own

admission, the government did not even vigorously pursue the investigation of Mr. Toader until

he was dropped in their lap as a result the of his arrest in Arizona,   In short, the government put

Mr. Toader's case on the back burner.  In their ex party motion @ par. 6, p. 5,  the government

stated,

> (c)ertain aspects of the investigation as to defendant Toader previously
> were not pursued aggressively so that the government could focus its
> investigative efforts on the other defendants already charged and in
> custody in case no. 06 CR 923.  Once the government learned that
> defendant Toader had been apprehended by the DHS, it quickly intensified
> its efforts to secure evidence relating to his involvement in the scheme.

In <u>Bilotta</u>, cited above, the court dismissed with prejudice charges of exporting military and

electronic equipment to Libya, a hostile nation, where the government had waited eighteen

months to indict the defendant.  Specifically, the judge questioned why the government would

wait so long to indict a case they now urged the judge to regard as seriousness under the STA.

That same logic applies with equal force in Mr. Toader's case.

### FACTS AND CIRCUMSTANCES OF THE CASE

The government is solely responsible for the 68 days of non-excludable time that

accumulated between Mr. Toader's arrest in Arizona and his indictment in the Northern District

of Illinois.  The delay is entirely attributable to the government's neglect coupled with their

incorrect interpretation of  18 U.S.C. § 3161(H)(1)(h).  The government offers no explanation for

ignoring Magistrate Pyle's order that Mr. Toader be promptly removed from Arizona and

transported to the Northern District of Illinois. Despite the clear mandate of  3161(H)(1)(h), the

government posits that this delay may have been reasonable under the circumstances. (Gov.

Reply @ p. 1).  However, the government can not point to a single fact in support of this

assertion.  Rather than learning a lesson from this "mistake", the government appears to defend it

and thus may repeat it.

There is no question that the government was aware of Mr. Toader's arrest, he was

arrested pursuant to their warrant.  There is no question that the government received notice of

the removal order, it was docketed in the Northern District of Illinois the same day it was entered

in Arizona.  Finally, there is no question that the government had the ability to transport Mr.

Toader from Oklahoma to the Northern District of Illinois at an earlier time.  Mr. Dumitru, a

defendant in the 21 defendant case, was in the Oklahoma holding facility with Mr. Toader.

Dumitru  appeared before Judge Darrah for arraignment, in the Northern District of Illinois, on

February 13, 2008, obviously having been transported sometime before that.

     18 U.S.C. § 3161(h)(1)(H) states that, "...any time consumed in excess of ten days from

the date an order of removal or an order directing transportation, and the defendant's arrival at

the destination shall be presumed to be unreasonable."

> Congress has indicated that a delay greater than ten days is presumed to be
> unreasonable. 18 U.S.C. § 3161(h)(1)(H).  An inexplicable failure to comply with
> a court order cannot be described as reasonable. Hence, the congressional
> presumption operates to condemn it as unreasonable.  U.S. v. Bauer, 286
> F.Supp.2d 31, 34 (D.D.C.,2003).

     If, as the government alleges, Mr. Meyer "shared the government's view that the time

defendant spent in transit from the District of Arizona to the District of Illinois would be

excluded under the Speedy Trial Act", then they were both mistaken in their beliefs.   A cursory

reading of 18 U.S.C. § 3161(h)(1)(H) dispels that notion.

     Excluding the allowable 10 day period for transporting Mr. Toader, and the 6 day

continuance for Toader to obtain counsel, the government's *ex parte*  motion for an extension of

time was filed well after the 30 day limit imposed by the STA had run.  The indictment was

returned 37 days later, on April 17, 2008.  In total, the government exceeded its allotted time by

68 days.

     The government's motion failed to inform the Acting Chief Judge that they were already

in violation of the Speedy Trial Act.  Rather, the government erroneously averred that,

"...excluding the time period associated with his removal from the District of Arizona and

transfer to the Norther (sic) District of Illinois, it appears that an indictment or information must

be filed on or before March 22, 2008." (Id. @ p. 8).  The extension of time to indict was granted

in error, based on the faulty information contained in the governments motion.

Moreover, the government relied upon grounds not founded in § 3161 (h)(8)(A)&(B) to justify the extension.   A glaring example is found at par. 6, p. 5,  wherein the government stated,

> (c)ertain aspects of the investigation as to defendant Toader previously were not pursued aggressively so that the government could focus its investigative efforts on the other defendants already charged and in custody in case no. 06 CR 923.  Once the government learned that defendant Toader had been apprehended by the DHS, it quickly intensified its efforts to secure evidence relating to his involvement in the scheme.

In essence, the government sought the extension of time because they had other fish to fry and could not be bothered to file a complaint or obtain an indictment until Mr. Toader fortuitously fell into their lap.  18 U.S.C. § 3161(h)(8)( C ) specifically states that, "(n)o continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government."

The government's contention, in the Ex Party Motion, that they needed to secure more evidence of Mr. Toader's involvement in the scheme is belied by the evidence they had gathered prior to March 11, 2008.  An examination of the contents of the government's Affidavit,  the Ex Parte Motion and letters to Mr. Toader's counsel clearly demonstrates that prior to filing the Ex Party Motion; the government had investigated the scheme for three and one half years; had obtained the cooperation of at least two defendants in the 21 defendant case; had convicted or pled out the 21 defendants in the related case, with the exception of the fugitive defendants; had obtained records from Western Union, currency exchanges, phone companies, Bank of America, JP Morgan Chase Bank and MoneyGram and other sources, which the government characterized

as "voluminous" in their letter of 2/29/08 to attorney Meyer (the government also stated in the

letter that they were providing, " a small sample of the documentation gathered by the

government thus far demonstrating your clients guilt.") and; had already formulated the basis for

a proposed plea to money laundering ((Letter of March 11, 2008).  Other than their own failure to

act in a timely fashion, there was no reason for the government's violation of Mr. Toader's rights

under the STA.  It also appears the government was less than candid about the state of the

evidence pertaining to Mr. Toader in their Ex Parte Motion.

### THE IMPACT OF A REPROSECUTION ON THE ADMINISTRATION OF THIS CHAPTER AND ON THE ADMINISTRATION OF JUSTICE.

The government believed, albeit incorrectly, that the STA deadline for indicting Mr.

Toader was March 22, 2008. (Ex Parte Motion @ p. 6).  The government claimed in a letter to

attorney Meyer that, prior to April 29, they possessed sufficient evidence to demonstrate Mr.

Toader's guilt.  (Letter of 2/29/08).  Yet, rather than obtaining an indictment with that evidence,

the government sought to delay the process via their ex parte, under seal motion to extend the

time to indict.  The reason for that delay is obvious.  The government sought build a different

case than the one they believed they could already prove and wanted to delay the proceedings to

accomplish that end.  The governments letter to Mr. Meyer on March 20, 2008, bears this out.  In

the letter the government rescinded their offer to allow Mr. Toader to plead to money laundering

because,

> **...the evidence in the case has now progressed to the point where I do not believe a plea to a money laundering count alone will be possible.** For example, I **recently learned** that Toader was buying counterfeit identification documents for his crew from an individual who was working as a cooperating witness in the investigation of the Leija-Sanchez organization that operated near 26th and Cal. **The case agents are gathering copies of recorded calls placed by Toader to the CW, and I will provide copies of those call to you when I receive them.** (Letter of 3/20/08, attached as Ex. 9). (Emphasis supplied).

This letter clearly demonstrates that the government's failure to indict Mr. Toader was not the result of benign neglect.   Rather, it demonstrates the government's concerted disregard for the mandates of the STA in order to gain a tactical advantage.

At every critical stage of this case, Mr. Toader urged this case forward.  First, he waived the removal hearing in Arizona and demanded a preliminary hearing in Northern District of Illinois.  When Mr. Toader realized the government had violated the STA, he urged his attorneys to speak up.  When that failed, Mr. Toader filed pro-se motions asserting the violation.

It is worth noting that Mr. Toader was able to read and understand that 18 U.S.C. § 3161(h)(1)(H) limits the excludable delay for removal to 10 days while the experienced prosecutors in this case claim it escaped their notice.  Not to overstate the obvious, Mr. Toader's motivation is far greater as his liberty and ability to prepare for trial compromised by the government's delay.

> The length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty:
> "[I]nordinate delay between public charge and trial, ... wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. U.S. v. Taylor, 487 U.S. 326, 340-41, 108 S. Ct. 2413, quoting *Barker v. Wingo,* 407 U.S. 514, 537, 92 S.Ct. 2182, 2195, 33 L.Ed.2d 101 (1972) (White, J., concurring), quoting *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971).

In addition to the normal anxiety associated with arrest and detention, Mr. Toader's mother, Christina Toader, and sister, Lina Toader, were seriously injured in an automobile accident in

Romania on or about March 18, 2008.   Both the defendant's mother and sister are on life

support.  By virtue of his siblings young ages and the fact that his father is mentally impaired,

there is no one in Mr. Toader's immediate family to deal with this family tragedy.

Finally, the government's contention that dismissal without prejudice is not a 'toothless

sanction' is disingenuous under the circumstances of this case.  In their discussion of dismissal

with or without prejudice the Taylor court made the following observations;

> Dismissal without prejudice is not a toothless sanction: it forces the
> Government to obtain a new indictment if it decides to reprosecute, and it
> exposes the prosecution to dismissal on statute of limitations grounds.
> Given the burdens borne by the prosecution and the effect of delay on the
> Government's ability to meet those burdens, substantial delay well may
> make reprosecution, even if permitted, unlikely. U.S. v. Taylor, 487 U.S.
> 326, 342, 108 S. Ct. 2413, 2422

Such is not the case here.  Rather, the government's response to Mr. Toader's *pro se* motion

sought a specific date, now past,  for the Court to enter the dismissal order so that the

government could come to court armed with a superseding indictment. (Gov. Response @ pages

8-9).  Apparently, re-indicting Mr. Toader poses no problem for the government.  Moreover, and

more importantly, were this Court to dismiss Mr. Toader's case without prejudice, it would be

rewarding the government's dilatory tactics and allow them to benefit from there own purposeful,

(at worst) or negligent (at best) conduct.   It is self -evident that dismissal with prejudice always

sends a stronger message than dismissal without prejudice, and is more likely to induce salutary

changes in procedures, reducing pretrial delays.  U.S. v. Taylor, 487 U.S. 326, 342, 108 S. Ct.

2413, 2422.

In summary, the seriousness of the case against Mr. Toader should not weigh in favor of

the government, where they failed to treat it as such.  The facts and circumstances of the case

weigh heavily in favor of dismissal with prejudice where the government is responsible for the

entire initial delay and then furthered the delay by filing an Ex Parte Motion without a proper

basis and containing incorrect facts.  Dismissing the case with prejudice would further the

administration of the STA.  Dismissing the case with prejudice would also further the

administration of justice by preventing the government from availing itself of delaying tactics.


                                                    Respectfully submitted,

                                                     S/ Susan Shatz_____
                                                    Attorneys for Defendant
                                                    Gabriel Toader


SUSAN SHATZ
407 South Dearborn Street, Suite 1675
Chicago, Illinois 60605
312-697-0022

## CERTIFICATE OF SERVICE

I, Susan Shatz, attorney, certify that I caused a copy of the above

**DEFENDANT GABRIEL TOADER'S  REPLY TO THE GOVERNMENT**

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT** to be

served by electronic filing on August 21, 2008 on:


AUSA Brian Hayes
U.S. Attorney's Office
219 S. Dearborn St., 5th Floor
Chicago, IL 60604


Executed on August 21, 2008


_S/ Susan Shatz_____