# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 07 CR 862 |
| ) | |
| GABRIEL TOADER ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On December 21, 2007, the government filed a criminal complaint charging Gabriel Toader with money laundering in violation of 18 U.S.C. § 1957(a) and three other persons with wire fraud in violation of 18 U.S.C. § 1343. The complaint alleged, in substance, that Mr. Toader and three others had been knowing participants in a fraud scheme that involved tricking people to purchase items they thought were being offered for sale via internet sites like eBay.

According to the complaint, certain unnamed coschemers, most or all of them located in Romania, were alleged to have posed as sellers of real merchandise, though they had no intention of delivering anything. Once a victim in the United States or Canada agreed to purchase an item, he or she was directed to send funds via Western Union to one of a network of persons in the United States who were working in concert with the coschemers in Romania. The domestic coschemer would then present himself or herself at a Western Union office under false pretenses to obtain the funds the victim had wired. The victims did not, however, obtain the merchandise they thought they had purchased.

The complaint alleged that Mr. Toader received information from the Romanian coschemers regarding wire transfers by victims and, in turn, provided that information to others who presented themselves at Western Union offices to collect the funds and later turned them over to Mr. Toader. Mr. Toader would then distribute a portion of the funds to the local coschemer and send the rest to one of the foreign coschemers.

The complaint charged Mr. Toader with money laundering relating to his handling of the proceeds of the scheme. Though he was not charged with the underlying fraud scheme, the complaint made it clear that the government was alleging he was a knowing participant in that fraud.

Mr. Toader was arrested in Arizona on or about December 26, 2007. He appeared before a magistrate judge in the District of Arizona the next day and again on January 2. On the latter date, he waived an evidentiary hearing. The magistrate judge ordered Mr. Toader's prompt removal to this District and ordered that the preliminary hearing be held here.

Mr. Toader was then transported from Arizona to Oklahoma, where he was held in segregation for an extended period. He did not arrive in Chicago until February 22, 2008, fifty-one days after the magistrate judge had ordered his prompt removal. Mr. Toader first appeared before a magistrate judge in this District on February 27, 2008. The attorney who appeared with him stated that his partner had previously represented a defendant in a related case and that as a result it was unlikely the partner would be able to represent Mr. Toader in this case. Mr. Toader was given a continuance to March 4, 2008 to obtain counsel. The first lawyer's partner in fact filed an appearance for Mr. Toader on that date, and on March 5, 2008, he waived a detention hearing and

2

the preliminary hearing (Mr. Toader alleges he did not knowingly approve this, and the Court assumes the accuracy of that allegation for purposes of discussion).

On March 11, 2008, the government filed an *ex parte* motion with the acting chief judge seeking a twenty-six day extension to return an indictment, pursuant to 18 U.S.C. § 3161(h)(8). The motion failed to disclose that the Speedy Trial Act clock had already run. The motion stated that the government needed more time because it had not "previously . . . pursued aggressively" certain aspects of the investigation against Mr. Toader so it could focus on other already charged defendants but that the government's investigation of Mr. Toader had intensified since his arrest. The acting chief judge signed an order on March 11 granting the government's motion.

On April 17, 2008, a grand jury indicted Mr. Toader and the three other persons named in the criminal complaint. It charged Mr. Toader with one count of money laundering and three counts of wire fraud. Mr. Toader, despite having appointed counsel, thereafter filed a *pro se* motion to dismiss the charges based on alleged violations of the Speedy Trial Act. The Court later appointed new counsel, who filed a further memorandum in support of Mr. Toader's motion.

More recently, the government obtained a new indictment eliminating the money laundering charge against Mr. Toader and charging him with ten counts of wire fraud. Mr. Toader thereafter filed a supplemental memorandum in which he argued that he is entitled to dismissal of all the charges pursuant to the Speedy Trial Act. The government argues that at most, Mr. Toader would be entitled to dismissal only of the money laundering charge asserted in the criminal complaint (but no longer part of the case), not the wire fraud charges which currently are the only charges pending against

3

him.

The Court need not address the propriety of dismissal of the money laundering charge, as it is no longer part of the case. With regard to the wire fraud charges, the Court agrees with the government that dismissal is inappropriate. In making this determination, the Court assumes that the government violated the Speedy Trial Act in connection with its return of the money laundering charge in the first indictment. The provision of the Act that mandates dismissal of untimely charges, however, applies only to the charge contained in the original criminal complaint:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) . . ., such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

18 U.S.C. § 3162(a)(1). As the Second Circuit recently stated, this language "applies only to charges 'actually pending against an individual.'" *United States v. Gaskin*, 364 F.3d 438, 451 (2d Cir. 2004) (quoting *United States v. Hillegas*, 578 F.2d 453, 457 (2d Cir. 1978)). Other circuits have agreed. *See id.* at 451-52 (citing cases from the Third, Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits). The Court has no reason to believe that the Seventh Circuit would read the statute differently; the Second Circuit's interpretation in *Gaskin* is based on the plain language of section 3162(a)(1) - specifically its use of the phrase "such charge."

The wire fraud charges currently pending against Mr. Toader involve, to be sure, facts that largely duplicate those asserted in the criminal complaint as the basis for the money laundering charge. But as the Second Circuit stated in *Gaskin*,

> when a complaint charge and an indictment charge involve overlapping or

4

> even identical facts, dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint. Under such circumstances, the charge in the indictment is simply not "'such charge'" as was pleaded in "'such complaint.'"

*Id.* at 453 (quoting *United States v. Napolitano*, 761 F.2d 135, 137 (2d Cir. 1985) (in turn quoting 18 U.S.C. § 3162(a)(1))).

Some courts have recognized a limited exception to the general rule when a charge or charges in the indictment merely "gild" the complaint charge. *See, e.g., United States v. Giwa*, 831 F.2d 538, 542 (5th Cir. 1987). Though Mr. Toader's case is arguably a close one on this point, due to the fact that the underlying fraud that forms the basis of the current wire fraud charges was laid out in detail in the criminal complaint, the Court is not persuaded that the exception entitles him to dismissal of the wire fraud charges. In *Giwa*, the Fifth Circuit concluded, and this Court agrees, that the exception does not apply when the new charges involve separate offenses requiring proof of elements different from those in the original complaint. *Id.* at 543. Gilding, as one judge has noted, is "a process of making a thing seem like something it is not." *United States v. Peppin*, 365 F. Supp. 2d 261, 269 (N.D.N.Y. 2005). It does not appear to the Court that the government has attempted to reword, dress up, or elaborate on the original charges to make them appear to be different from the money laundering charge that suffers from a Speedy Trial Act problem. They are, in fact, different charges.

Nor is the Court persuaded that there is in this case, as there was in *Peppin*, a bad faith effort to avoid the Speedy Trial Act. To be sure, when the government sought the extension of time to return an indictment, it should have disclosed to the acting chief

5

judge that the Speedy Trial Act clock had run (or at least arguably had run). In addition, the reason the government gave for the extension – that it had not pursued the investigation of Mr. Toader aggressively prior to his arrest so that it could focus on other defendants – likely was not an appropriate basis for an extension of time under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(8)(C) ("[n]o continuance under subparagraph (A) of this paragraph shall be granted because of . . . lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government."). But based on the record before the Court, these deficiencies appear to be the result of carelessness, not guile or bad faith.

For these reasons, the Court concludes that the "gilding" exception does not govern this case and that dismissal of the current wire fraud charges would be inappropriate. As noted earlier, because no money laundering charge is currently asserted, the Court need not address whether such a charge would be subject to dismissal with prejudice if it had not been eliminated from the case.

The Court is, however, publishing this decision in the hope that it will cause the government to exercise greater care in the future in seeking extensions of time to return charges. When the government seeks relief on an *ex parte* basis, as it does and is entitled to do in this situation, it assumes an enhanced duty of candor and care, due to the absence of an opportunity for adversarial challenge. In this Court's view, when seeking such an extension, it is incumbent on the government to advise the judicial officer to whom the request is made of the then-current status of the Speedy Trial Act clock – accurately – and to seek extensions only for reasons that actually pass muster under the Act. Specifically, when an extension is sought, as it was in Mr. Toader's

case, due to the need for further investigation, the government should state facts that show its diligence prior to the date of the request.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss [docket no. 45].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 11, 2008