IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 CR 862 |
| vs. | ) | |
| | ) | Judge Matthew F. Kennelly |
| GABRIEL TOADER, | ) | |
| | ) | |
| Defendant. | ) | |

**TOADER PLEA DECLARATION - COUNT 4**

GABRIEL TOADER, after consultation with his attorney, Susan Shatz, acknowledges and states as follows:

1. Mr. TOADER is charged in Counts 1, 2, 3, 4, 6, 7, 11, 23, 28, 29, 31, 33 and 34 of a 48 count superceding indictment which charges various defendants with specific acts of wire fraud.

2. Mr. TOADER has read the charges against him contained in the superceding indictment and the charges has been fully explained to him by his attorney.

3. Mr. TOADER understands the nature and elements of the offense with which he has been charged. Mr. Toader will enter a voluntary plea of guilty to Count 4 of the superceding indictment.

1

**FACTUAL BASIS**

4. In October of 2004, Mr. TOADER was 23 years old and a citizen Romania. Since the age of 15, Mr. TOADER had worked in restaurants and hotels. While working at a five star hotel in Romania, Mr. Toader heard that there were excellent job opportunities in America.[1] Along with his friends, Bela Balint, Adrian Ghighina and Andrie Ovidiu, Mr. Toader applied for and was granted a work visa to come to the United States. The group of friends was hired to work at the Polo Club, located in Boca Raton, FL. After working at several clubs in Florida, the group of friends relocated to Chicago, in approximately April, 2005. Mr. Toader and several of his friends were then employed at a restaurant in Greek Town.

After working in Chicago for a few months, Mr. TOADER went to get a hair cut and met Estera, the stylist who cut his hair. Estera's two sisters also worked in the salon, one of whom was married to Christian Bentan. (Mr. Bentan was a defendant in the companion case 06 CR 923.) Mr. Toader and Estera started dating and thereafter he met Mr. Bentan in or around July, 2005. Mr. Toader was struggling to make ends meet and Mr. Bentan, who appeared to be well off, often picked up the tab when the couples went out together. Over time, Mr. Toaders friends Bela Balint and Adrian Ghignina also

---

[1] Christina Savu also worked as a receptionist at this hotel and that is were she and Mr. Toader first met.

met Mr. Bentan at various social events. Mr. Bentan was always generous about paying for social outings and it was apparent to Toader, Balint and Ghignina that Bentan earned a lot of money. Eventually, Mr. Bentan proposed that Toader and his friends could earn money by picking up money for him. Toader declined. However, a short while later, (approximately early August 2005) Bentan asked Toader to send money to Moscow for him and Toader agreed to do so, although he was not paid for this act. By this time Toader and Estera were in a serious relationship. Bentan lent Toader the money to rent an apartment for Toader and Estera and paid for their engagement party which took place in September, 2005. By September 2005, Toader had spent enough time with Bentan to understand the scheme he was involved in. On one occasion, when Bentan and Toader were out and Bentan had too much to drink, Toader answered Benton's phone and wound up speaking to the foreign co-conspirator to whom Benton was sending the proceeds of the scheme. Bentan confided in Toader that he had squandered much of the money he was supposed to have sent overseas to the foreign co-conspirator. Toader agreed to be responsible for sending the money from the scheme to the foreign co-conspirator. Toader felt indebted to Bentan for all the money he had lent, given and spent on him and Estera. Toader was paid approximately 10% of the money he sent to the foreign co-conspirator, used some to the 10% to repay Bentan and kept the remaining money for himself.

Beginning in or around August, 2005, Mr. Toader was responsible for wiring the proceeds of the scheme out of the country to foreign co-schemers. Mr. Toader continued to wire proceeds out of the country until his arrest in Arizona, on December 16, 2007. Mr. Toader sent the money from his bank accounts which were entitled Gabriel D. Toader; Gabriel D. Toader / Gabriela L. Deaconu; TDG Consulting LLC / Gabriel D. Toader; Gabriel Toader / Gabriela L. Apetechiae. The amount of money which Mr. Toader wired as well as the amount of money he received from the scheme remains to be determined at sentencing.

The scheme from which this money was derived operated in the following manner;

> 1. The foreign co-schemers advertised items for sale on the internet;
>
> 2. Victims who "purchased" the items sent in payment through Western Union, Money Gram or wire transferred the money to individuals working in concert with the foreign co-schemers; and
>
> 3. The victims never received the items they purchased and they did not get their money back.

On or about May 25, 2006, Toader caused a wire transfer of $9,900. to be transmitted to from Illinois to the AFMA Corporation in Cyprus, knowing that the money he transmitted was derived from the fraudulent scheme.

4

**POTENTIAL PENALTIES**

5. Mr. TOADER understands that Count Four, to which he is pleading guilty, carries a maximum penalty of up to twenty years imprisonment and a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Mr. TOADER further understands that the Court may also impose a term of supervised release of not more than three years and any restitution ordered by the Court.

6. Pursuant to 18 U.S.C. § 3013, upon entry of judgment of conviction, the Court will assess Mr. TOADER $100 for the court of conviction, payable to the Clerk of the United States District Court, with a cashier's check or money order, at the time of sentencing, in addition to any other penalties imposed.

**ADVISORY GUIDELINE RANGE**

7. Mr. TOADER understands that the sentencing guidelines promulgated by the United States Sentencing Commission pursuant to 28 U.S.C. § 994 are merely advisory, not mandatory, pursuant to United States v. Booker, 125 S. Ct. 738 (2005). He further understands that the Court must consider the guidelines as one of several factors set forth in 18 U.S.C. § 3553(a) in determining a reasonable sentence.

8. For purposes of calculating the advisory sentencing range under the November 1, 2008 guidelines, the following applies;

    (a) Pursuant to Guideline § 2B1.1(a)(1), the base offense level is 7.

(b) Pursuant to Guideline § 2B1.1(1)(H) 14 levels are added to the base offense level.[2]

( c) Pursuant to Guideline § 2B1.1(b)(2)(B) 4 levels are added to the base offense level.[3]

(d) Pursuant to Guideline § 2B1.1(b)(9)(B) 2 levels are added to the base offense level because a substantial part of the scheme was committed from outside the United States.

(e) The parties disagree as to whether Mr. Toader role in the offense merits an increase in his offense level pursuant to Guideline 3B1.1 and he understands that the Court will resolve this issue at sentencing.

(f) By pleading guilty Mr. TOADER admits his guilt, accepts responsibility and expresses sincere regret that he engaged in this conduct.  He understands that a two level reduction for acceptance of responsibility, pursuant to guideline 3E1.1(a) is applicable.

---

[2]Mr. Toader's position is that the amount of loss reasonably foreseeable to him is between $400,000 and $1,000.000.  Further, Mr. Toader understands that the government believes the loss amount reasonably foreseeable to him exceeds $1,000,000, which would increase his base offense level by at least 16.  Mr. Toader is aware that this factual dispute will be resolved at sentencing and the Court will make the final calculation.

[3]Mr. Toader's position is that the number of victims reasonably foreseeable to him is between 50 and 250.  Further, Mr. Toader understands that the government believes the number of victims  reasonably foreseeable to him exceeds 250, which would increase his base offense level by 6.  Mr. Toader is aware that this factual dispute will be resolved at sentencing and the Court will make the final calculation.

(g) Mr. TOADER has timely notified the government of his intention to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by 3E1.1(b) , if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a 2 level reduction for acceptance of responsibility, he should receive an additional 1 level reduction.

(h) Mr. TOADER has no criminal history and his criminal history category is I.

(e) Therefore, the resulting advisory guideline range, based on defendant's calculation, before the application of any additional applicable departures, is 51-63 months imprisonment.[4]

## TRIAL RIGHTS AND APPELLATE RIGHTS

9. Mr. Toader has discussed with his attorney and understands that by pleading guilty he is waiving certain rights, including the following:

(a) If he persisted in a plea of not guilty to the charge against him he would have the right to a public and speedy trial. The trial could be either a jury trial or a bench trial, where the judge and not a jury would hear the evidence and find the facts. However, the Court, the defendant and the government would have to agree to the judge hearing the matter without a jury.

---

[4] Total offense level     27
  Acceptance and timely notification    - 3
  Advisory guideline range    24 / I

(b) If a jury trial were held, the jury would be comprised of twelve citizens, selected at random. Defendant and his attorney would have the right to eliminate any prospective jurors for cause whose actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to unanimously agree before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent and that it could not convict him until and unless, after hearing all the evidence, it was persuaded of the Defendant's guilt beyond a reasonable doubt.

(c) If the trial were held by a judge without a jury, the judge would find the facts and determine after hearing all the evidence and considering each count separately, whether or not he was persuaded of the Defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a judge or jury, the government would be required to present witnesses and other evidence against the Defendant. The Defendant has the right to confront the government witnesses and his attorney would have the right to cross- examine them. Additionally, the Defendant has the right, but not the obligation to present evidence and witnesses in his own behalf. However, because he is presumed innocent and need not prove his innocence, he is not required to present any evidence in his behalf. Further, if the Defendant chose to present witnesses, he could require their attendance in

court through the subpoena power of the court.

(e) At trial, the Defendant would have the privilege against self-incrimination and could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If the Defendant chose to do so, he could testify in his own behalf.

10. Mr. TOADER understands that by pleading guilty he is waving all the rights set forth in the preceding paragraph. Further, in pleading guilty, Mr. TOADER admits he is guilty and agrees that he should be found guilty. Mr. TOADER has discussed his trial rights with his attorney and understands that by pleading guilty he is waiving all appellate issues that may have been available had he exercised his right to trial, and may only appeal the validity of the Court's pre-trial rulings, his plea of guilty and the sentence imposed.

**LIMITATIONS and CONSEQUENCES of this PLEA AGREEMENT**

11. Mr. TOADER understands that the United States Attorney's Office will fully apprise the Court and the United States Probation Office of the nature, scope and extent of his conduct regarding the charges against him and related matters, including all matters in aggravation and mitigation relevant to the issues of sentencing. He further understands that he will be able to present evidence in mitigation at the time of sentencing, pursuant to 18 U.S.C. § 3553(a). Mr. TOADER further acknowledges that the Court's decision as to what constitutes a sentence "sufficient, but not greater than necessary" to

9

comply with the purposes set forth in 18 U.S.C. § 3553(a) may result in a sentence either within, greater, or less than the applicable guideline range and that he does not have the right to withdraw his plea were the Court to impose a sentence greater than set forth in his Plea Declaration.

12. Mr. TOADER understands that at the time of sentencing, he and the government will be free to make their respective recommendations to the Court, as they deem appropriate, based on the sentencing factors set forth in 18 U.S.C. § 3553(a).

13. Should the Court refuse to accept Mr. TOADER's guilty plea, this Plea Declaration shall become null and void and Mr. TOADER will not be bound thereto. It is Mr. TOADER's position that, should the Court decline to accept his plea, this Plea Declaration and the ensuing court proceedings are inadmissible in future court proceedings pursuant to Federal Rules of Criminal Procedure 11(e)(6)(A), (C) and (D).

14 Mr. TOADER understands that the superseding indictment contains a forfeiture allegation and that he has a right to have a jury decide by a preponderance of the evidence whether certain property in which he has an interest is subject to forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 982, and that the verdict of the jury on the forfeiture allegation must be unanimous. Mr. Toader agrees to relinquish his right to have a jury consider whether certain property is subject to forfeiture, and understands that

the judge alone will decide whether certain property belonging to the defendant is subject to forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 982.

15. Mr. TOADER understands that this Plea Declaration shall be filed and become part of the public record of this case.

16. Mr. TOADER and his attorney acknowledge that no threats, promises or representations have been made, nor any agreements reached to induce Mr. TOADER to plead guilty. Mr. TOADER further acknowledges that he has read this Plea Declaration and carefully reviewed each provision with his attorney.

Dated: _____
GABRIEL TOADER, Defendant

Dated: _____
Susan Shatz - Attorney for
GABRIEL TOADER

Susan Shatz
407 S. Dearborn St. # 1675
Chicago, IL. 60605
(312-697-0022)

## **CERTIFICATE OF SERVICE**

      Susan Shatz hereby certifies that in accordance with Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document: GABRIEL TOADER'S PLEA DECLARATION, was served on February 13, 2009, pursuant to the district court's ECF system as to ECF filers.

      S/ Susan Shatz
      Attorneys for Mr. TOADER
      407 S. Dearborn, Suite 1675
      Chicago, IL 60605
      (312) 697-0022